<pre>
 1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2
      * * * * * * * * * * * * * * * *    )
 3    UNITED STATES OF AMERICA,          )      Criminal Action
                                         )       No. 15-00046
 4                    Plaintiff,         )
                                         )
 5       vs.                             )
                                         )
 6    DESHAWN E. HOOD,                   )      Washington, D.C.
                                         )      August 24, 2022
 7                    Defendant.         )      1:19 p.m.
                                         )
 8    * * * * * * * * * * * * * * * *    )

 9

10         FINAL HEARING RE:  REVOCATION OF SUPERVISED RELEASE
            BEFORE THE HONORABLE TREVOR N. McFADDEN,
11                  UNITED STATES DISTRICT JUDGE


12
      APPEARANCES:
13
      FOR THE GOVERNMENT:     ANDY WANG, ESQ.
14                            UNITED STATES ATTORNEY'S OFFICE
                                FOR THE DISTRICT OF COLUMBIA
15                            601 D Street, Northwest
                              Washington, D.C. 20530
16

17    FOR THE DEFENDANT:      MICHAEL E. LAWLOR, ESQ.
                              BRENNAN, McKENNA & LAWLOR
18                            6305 Ivy Lane
                              Suite 700
19                            Washington, D.C. 20770


20
      FOR U.S. PROBATION:     MONICA GLOVER
21

22    REPORTED BY:            LISA EDWARDS, RDR, CRR
                              Official Court Reporter
23                            United States District Court for the
                                District of Columbia
24                            333 Constitution Avenue, Northwest
                              Room 6706
25                            Washington, D.C. 20001
                              (202) 354-3269
</pre>

1              THE COURTROOM DEPUTY:  Your Honor, this is

2      Criminal Action 15-46, the United States of America versus

3      Deshawn E. Hood.

4              Can the parties please come forward to identify

5      yourselves for the record, starting with the Government.

6              MR. WANG:  Good afternoon, your Honor.  Andy Wang

7      for the United States.

8              THE COURT:  Good afternoon, Mr. Wang.

9              MR. LAWLOR:  Good afternoon, your Honor.  Michael

10     Lawlor for Mr. Hood.

11             THE COURT:  Good afternoon, Mr. Lawlor.

12             Good afternoon, Mr. Hood.

13             THE PROBATION OFFICER:  Good afternoon, your

14     Honor.  Monica Glover on behalf of the United States

15     Probation Office.

16             THE COURT:  Good afternoon, Ms. Glover.

17             And my apologies to you all for being a little

18     late in getting started.  I was just trying to collect some

19     of the papers from the history here in this case.

20             We're here for a hearing on violation of

21     supervised release.

22             Mr. Lawlor, maybe we can start with you.  Tell me

23     where things stand.

24             MR. LAWLOR:  Your Honor, I think all the parties

25     are in agreement that -- well, first off, Mr. Hood intends

1    to admit to the first six violations.

2            The parties are, I think, jointly recommending

3    that the Court sentence Mr. Hood to three months'

4    incarceration and then terminate further supervision.

5            THE COURT:  Is that all correct, Mr. Wang?

6            MR. WANG:  Yes, your Honor.

7            THE COURT:  Mr. Hood, I think I'll just go through

8    these and ask you to state whether you concede or do not

9    concede them.

10           Violation No. 1:  You must report to the probation

11   office in the federal judicial district where you are

12   authorized to reside within 72 hours of your release from

13   imprisonment unless the probation officer instructs you to

14   report to a different probation office or within a different

15   timeframe:  Do you concede or dispute that violation?

16           THE DEFENDANT:  No, your Honor.  Oh, I admit I

17   violated.

18           THE COURT:  And as to the second, that you must

19   follow the instructions of the probation officer related to

20   the conditions of supervision:  Do you admit or not admit

21   that one?

22           THE DEFENDANT:  I admit.

23           THE COURT:  As to the third:  If ordered by the

24   probation office, you must participate in an inpatient

25   and/or outpatient substance abuse treatment program and

1      follow the rules and regulations of that program.   The

2      probation officer will supervise your participation in the

3      program:   Do you admit or not admit that you violated that?

4                  THE DEFENDANT:   I admit.

5                  THE COURT:   No. 4:   You must participate in a

6      mental health treatment program and follow the rules and

7      regulations of that program.   The probation officer in

8      consultation with the treatment provider will supervise your

9      participation in the program.   Do you admit or not admit

10     that?

11                 THE DEFENDANT:   I admit.

12                 THE COURT:   As to the fifth:   You must not

13     unlawfully possess a controlled substance and you must

14     refrain from any unlawful use of a controlled substance, do

15     you admit or not admit?

16                 THE DEFENDANT:   I admit.

17                 THE COURT:   As to the sixth:   You must submit to

18     substance abuse testing to determine if you've used a

19     prohibited substance and you must not attempt to obstruct or

20     tamper with the testing methods, do you admit or not admit

21     that one?

22                 THE DEFENDANT:   I admit.

23                 THE COURT:   And then the seventh:   You must not

24     commit another federal, state or local crime, Mr. Wang, am I

25     to understand you're not seeking to proceed on that one?

1          MR. WANG:  That's correct, your Honor.  We're not

2     proceeding on Violation No. 7.

3          THE COURT:  So I find that the Defendant has

4     conceded and in fact violated the first six alleged

5     violations here.

6          I will not consider the seventh violation in light

7     of the Government's position.

8          So I think what we'll do is I'll ask to hear from

9     Ms. Glover on her perspective as having been the supervising

10    officer.  Then I'll hear from both attorneys.

11         And, of course, Mr. Hood, you'll have an

12    opportunity to speak if you wish to be heard.

13         MS. GLOVER:  Thank you, your Honor.

14         For the record, and for the purpose of making sure

15    all parties are aware of what penalties Mr. Hood is facing,

16    I want to make sure we're all on the same page.  And I

17    believe I corrected this last time when we were before the

18    Court.

19         On Document No. 36, the original petition alleging

20    the violations, there was a typographical error on Page 4 in

21    the very first paragraph of imprisonment, where it says

22    eight to 14 months, USSG 7B1.4(a):  Upon a violation of a

23    grade -- it should be a Grade B finding -- a Grade B

24    violation, not a Grade C, at the time this petition was

25    written.

1              For purposes of clarifying what Mr. Hood now faces

2       in regards to sanctions, since the Court is looking at only

3       a Grade C violation, his guideline range is now five to 11

4       months.

5              However, because he served a previous term of

6       incarceration of eight months on this same case, we subtract

7       eight months from his five to 11, and the maximum sentence

8       Mr. Hood is eligible for on the guidelines side is three

9       months.

10             However, I do want to make the Court aware and all

11      the parties aware that there is a statutory maximum of 24

12      months the Court can seek to use if he feels that the

13      violations are to the point where Mr. Hood needs to be

14      punished up to a maximum of 24 months.

15             THE COURT:  Ms. Glover, can I just stop you right

16      there?

17             Mr. Wang, do you agree with all of those

18      assertions, both in terms of the guidelines and the maximum?

19             MR. WANG:  Yes, your Honor.

20             THE COURT:  And Mr. Lawlor, do you as well?

21             MR. LAWLOR:  I do.

22             THE COURT:  Thank you.

23             THE PROBATION OFFICER:  Anything else, your Honor?

24             THE COURT:  Ms. Glover, maybe you can just give me

25      a sense of -- obviously, I'm relatively new to this case.

1    Have you been with Mr. Hood all along?

2            THE PROBATION OFFICER:  I have been with Mr. Hood

3    since he came out on the second term of supervised release.

4    So I was assigned to his case prior to his release from the

5    Bureau of Prisons.  And our relationship, our communication

6    and our understanding of expectations has been very -- has

7    had a lot of turmoil.

8            Mr. Hood had an expectation of how he believed he

9    should be treated in the community; and his conduct, as

10   reflected in the report, was that.

11           It was a lot of hand-holding, following up,

12   contacting his mother to get him to comply, to the point

13   where I was notified by Fairfax County of a warrant and

14   instructed Mr. Hood to turn himself in.  We're not

15   considering that violation in regards to the recommended

16   sentence of three months, but that's kind of an overview of

17   Mr. Hood's behavior and attitude on supervision.

18           And for those reasons, we do not believe an

19   additional term of supervised release is needed at this time

20   as we don't believe he's amenable to supervision or the

21   services that the probation office can provide.

22           THE COURT:  As I look through your report, Officer

23   Glover, it looks to me like there's basically an almost

24   complete noncompliance.

25           THE PROBATION OFFICER:  Almost every day there was

1   contact with Mr. Hood, whether it was instructing him to

2   report, having to wait 30 minutes to an hour for him to

3   report, just noncompliance in multiple levels.

4        We've had very good conversations regarding his

5   attitude and his desire to change and to be different and to

6   be gainfully employed.  However, I believe the lack of his

7   participation in services did have a lot to do with the

8   overall success of his case.

9        THE COURT:  Thank you, Officer Glover.

10        I'll inform the parties, I'm considering an upward

11   variance here.  I'm not quibbling with the probation

12   office's guideline calculation that both attorneys also

13   agree with.  It seems to me there are some aggravating

14   circumstances here putting aside, of course, the Virginia

15   matter, both looking at the history of this case and now

16   what we're seeing here as virtually complete noncompliance

17   with probation.

18        Mr. Wang, I'll hear from you.

19        MR. WANG:  Thank you, your Honor.

20        Your Honor, I don't think the Government actually

21   has that much to add beyond what Officer Glover and your

22   Honor has already stated about the nature and circumstances

23   of Mr. Hood's compliance with the terms of his supervision.

24        The Government's recommendation is for three

25   months of revocation time, just to make that clear on the

1    record.

2             But obviously, it shares the concerns already

3    raised by the Court and Officer Glover.

4             Thank you.

5             THE COURT:  Mr. Lawlor?

6             MR. LAWLOR:  Your Honor, obviously, you know, I

7    can't deny that there is a pretty treacherous record in

8    terms of compliance.

9             I am going to ask the Court to go along with the

10   joint recommendation here.  I mean, given that we're not

11   factoring in Condition No. 7, Mr. Hood has not committed a

12   new crime.  The original case here dates back to 2015.  So

13   you're talking about being under court supervision for a

14   case that he got 15 months' incarceration for seven years.

15   So this started when he was 22.  He's now 29.  His future

16   baby's mother is here in court.  They're expecting a child

17   in December.

18            You know, Mr. Hood wrote to the Court.  I was in

19   the second case.  So Mr. Katzoff was the original attorney

20   in this case.  I was the attorney in the second case that

21   resulted in the eight months of violation time, but not a

22   new conviction.  So I've been with Mr. Hood since that time,

23   so I know that he has struggles.

24            Obviously, I know it's frustrating to Probation.

25   I've said to just about every judge in this district that I

1    practice in various jurisdictions.  And so, being candid, I

2    find supervision in most cases to be just a form of

3    punishment.  I don't think that's true here.  I think the

4    probation office here genuinely tries to help people.  Some

5    people are just not amenable to those services.  Mr. Hood is

6    one of them.  That's unfortunate, because he obviously needs

7    at a minimum mental health treatment.

8            But, your Honor, my suggestion to the Court

9    respectfully is that further incarceration here doesn't

10   serve anybody's purpose.  It's not going to help Mr. Hood to

11   be at the D.C. Jail or Bureau of Prisons for whatever

12   extended period of time.  I don't think it's going to help

13   society.  It's a difference of three months or nine months;

14   again, not assuming anything about the Court's intentions.

15           And obviously, as I said, as someone who could be

16   old enough to be Mr. Hood's father, I would like to see him

17   for his sake, for his family's cake, for his future child's

18   sake, to get the services that Probation is offering here so

19   that he can get substance abuse treatment or mental health

20   treatment or whatever it is that he needs to set him on a

21   good path, because he's going to need those things to

22   provide for his family.

23           That said, your Honor, at the risk of repeating

24   myself, I don't think that additional incarceration is going

25   to further his efforts to get on a better path or in any way

1   help society.  I can appreciate the Court may think

2   noncompliance of this nature deserves punishment.  I can't

3   necessarily disagree with that.  I just question the wisdom

4   of having Mr. Hood cool his heels at the jail for an

5   extended period of time.

6           So my request is that the Court follow the

7   recommendation of the parties and sentence Mr. Hood to three

8   months in jail.

9           THE COURT:  Thank you, Mr. Lawlor.

10           Mr. Hood, I should say for the record I did

11   receive your letter.  I'm not sure this is on the record,

12   but I'll make sure to put it on the record.  I have a

13   two-page letter from you that I believe we've provided to

14   the attorneys.  So I have read that, and I appreciate you

15   sending that.

16           Mr. Hood, is there anything else that you wish to

17   tell me or wish to present to me for consideration in regard

18   to your sentencing on this?

19           THE DEFENDANT:  I ask the Courts to forgive me for

20   not being --

21           THE COURT:  Sir, can I ask you to approach the

22   podium.

23           THE DEFENDANT:  Your Honor, I do ask the Courts to

24   forgive me for not being in compliance with the rules and

25   regulations of the Federal U.S. District Court Probation

1    Office.  I ask the Courts to allow me to get a course in

2    understanding rather than proceeding with misunderstanding

3    who I am.

4            From being shackled, your Honor, and to having my

5    stomach opened, it would change any person's perception of

6    life.  It's not something that's a walk in the park to deal

7    with, especially after a total of four different occasions

8    of being shot.

9            THE COURT:  I'm sorry.  Can you say that again?

10           THE DEFENDANT:  I say, it's not a walk in the park

11   to deal with being shot, especially after a total of four

12   different occasions.  It's safe to say I never be the same

13   mentally nor physically.  I suffer from several different

14   mental illnesses such as depression, anxiety, anger issues,

15   panic disorders, posttraumatic distress, self-harm, bipolar

16   and phobias, including social phobias.

17           I wonder why my assigned probation officer,

18   Ms. Glover, along with the prosecutor, being the Court --

19   being the Courts, will deliberately seek prosecution after

20   such an understanding of me.  For all of the recommendations

21   that the Courts are given about how great they are, no one

22   have yet to seek mental health or some form of mental health

23   guidance or anything of that nature.

24           For several long years, the government courts of

25   America have sought out to punish me for improperly going

1   about -- going about securing my well-being.

2          I humble myself before the Courts time after time,

3   only to be given a truth of who I am.  And I pray for

4   understanding that I be judged with understanding sincerely

5   and dignity instead of abhorrence, amateurs [sic],

6   resentment and antagonism.  I deserve fairness and

7   treatment, not detention and punishment.

8          I don't possess an extensive track record

9   implicating such a criminal menace to society, not even so

10  much as a threatening conduct.  But yet I'm looked down upon

11  with disgust as if the assumptions made by the Courts are

12  facts, which I wish to make clear assumptions are not facts.

13         I come before the Courts asking to be judged fair

14  and that the Courts implement mental health treatment and

15  that the Courts focus on rehabilitation instead of

16  incarceration.  By doing so, you would then be only

17  replicating what it means to be a true righteous American

18  citizen, citizens in power.

19         Today in closing, I humbly thank you for hearing

20  me out.  And hopefully I was able to give you an in-depth

21  understanding of who I am, because I'm not a bad guy.  I'm

22  just tired of society just wearing down on me.

23         A lot of people don't know what it feels like to

24  be dealing with mental issues that could cause someone who's

25  sane is gonna look at me as if I'm rude, belligerent and

1    things of that nature when they haven't led my life.  They

2    don't know what I go through on a daily basis.

3         In concluding, your Honor, I just want to say that

4    the probation office, I gave them -- I try.  You know?  It's

5    not like I go out there, I give them a complete, "Hey, I'm

6    off the chain" type of guy.  I get a job, which I did, which

7    is -- the good things is not being mentioned here, the

8    things that -- I tried the programs.  I did.  I took this

9    before Ms. Glover.  She stated from the standpoint of

10   Government mindset, "Hey, you gotta get it done no matter

11   what you feel, da-da-da."

12        Your Honor, I understand that.  But if something

13   is not going according to a mental health way of being

14   treated, I can't cope.  It's like I'm trying, but it's like

15   I'm going to fail.  You know?  I need -- I'm struggling with

16   myself.  I've got a lot I'm dealing with on a daily basis.

17   I've been shot more than war veterans.  You know what I'm

18   saying?

19        So it's like you telling me to do something where,

20   okay, I'm in compliance with trying to do it.  But it may

21   not be done to the point where you want it done as if.  You

22   know what I'm saying?  But you're not me.  You're not

23   struggling with the struggles I struggle with.  And that's

24   what's confusing.  You know what I'm saying?

25        If you're here and you're for me and you're for

1    rehabilitation, you should be here and trying to work with

2    me and not work against me by threats of "I throw you in

3    jail."  You could throw me around ignorance and -- which is

4    jail is filled with abundance of.  But that's not mental

5    health.  That's not good for my mental health.  That's not

6    good for me.  The rehabilitation, that's not good.  That's

7    not treatment.

8            Right now I have joined my own medical classes.

9    I've taken up on finding doctors on the streets for my sake,

10   which I've done.  And if I could be released, I could

11   continue on with my mental health programming, which I have

12   filed.

13           Now, if Ms. Glover chooses not to admit it or not,

14   I've tried these roads and I've tried these things now.  Due

15   to the fact that I may have failed while trying, it's not

16   fair for you just to say I'm unfit.  It's not fair at all.

17   I'm trying.  I go through my struggles every day.  Every

18   single day I wake up, I struggle with something.  It's not a

19   happy day for me.  I don't have my life together.  I'm being

20   put back into society as a second-class citizen or a

21   third-class citizen because I'm being punished for a period

22   of time, for years.

23           Your Honor, I've been punished for the same

24   situations.

25               (Confers with counsel privately.)

1        I'm just -- I've been punished, your Honor, for

2    the same situations for a long time.  And I'm just begging

3    the Courts to please give me a chance.  Give me a chance.

4    Let me go through my mental health programming as I should.

5        That's it.  And that's all.

6        THE COURT:  Thank you, sir.

7        You can remain at the podium, sir.

8        I appreciate your remarks.  I now want to provide

9    comments for the record and for you, sir, about my

10   considerations of this case in relation to the factors

11   Congress laid out in 18 USC 3553(a).

12       First, of course, as I said earlier, I do feel

13   like I'm faced with a situation of somebody who's on almost

14   every requirement failed to comply with the supervised

15   release and with the requirements of probation.

16       I agree with Mr. Lawlor that I think in this

17   district, the probation office really does try to work with

18   people, is trying to provide mental health treatment that we

19   all agree you need, is trying to get you back into a good

20   place in society.

21       And frankly, according to this report, which

22   you've conceded to, you have not worked with them.  I

23   just -- I mean, the mental health treatment that you say you

24   want, let me just remind you:  On or about July 9th, October

25   30th, November 9th, November 24th, 2020, and January 28th,

1    2021, Deshawn Hood failed to participate in mental health

2    treatment at FMCS in violation of his special condition.

3         We want you to get mental health treatment.  But

4    you haven't been working with Probation for that to occur.

5    And it's not just the mental treatment.  It's staying away

6    from drugs; it's calling in, being in touch with your

7    probation officer.  The probation officers here are very

8    long suffering.  I know that of this probation officer.  I

9    know that of this office.  They don't want to violate

10   people.  And yet this report card, if you will, is pretty

11   stunning in just the across-the-board failure to cooperate

12   with Probation and with supervised release.

13        I also need to take into account the kind of --

14   the path that's led us here.  As you know, I was not the

15   judge with you in your original case.  But as I see it

16   there, you faced a very significant sentence of 41 to 51

17   months, was the guideline range.  And you received a huge

18   break.  You received only 15 months' incarceration.

19        And obviously, I was not there.  I wasn't the one

20   who made that decision.  But I did look back at the letter

21   that you provided the judge then, where you said:  "I know

22   the prosecutor will make me out to be a thug, a criminal or

23   maybe even a menace to society.  And indeed, the odds are

24   against me to me being unable to prove otherwise.  But, your

25   Honor, I stress to you that I possess no such qualities.  In

1   actuality, I find myself to be more of a conscientious,

2   respectful mensch, zealous and even a magnanimous

3   individual."

4          You also said:  "This past time of being

5   incarcerated has enlightened me to make smarter decisions

6   because I want to better for myself, not -- and to get my

7   life back on track, to show all the benevolence that I

8   possess."

9          Quite possibly, in light of your representations

10  to that judge, she gave you a very reduced sentence.  And

11  yet within months of being released in that case, you were

12  picked up with another felon-in-possession-of-a-firearm

13  charge.

14         I recognize that that case was ultimately

15  dismissed because she found it a very -- she said an

16  extremely close question, but she found that the Government

17  violated -- or the police violated the Fourth Amendment in

18  that arrest.  But I don't think there's any question that

19  you did in fact have a gun again months after being released

20  for having a gun in this underlying case.

21         And what I hear and I see in your letter is still

22  kind of telling me you have the right to have a gun and

23  you're going to protect yourself.

24         I mean, I'm very sorry for what you've gone

25  through, in particular for the fact that you've been a

1    victim of shootings so many times.  But I've got to tell

2    you, there is a relationship between people who get shot and

3    people who carry around guns in this city.

4            And you may or may not know, but we are in the

5    middle really of a homicide epidemic here in D.C.  And it

6    has to do with men carrying guns who have no right and no

7    reason to be carrying guns and they get into an argument

8    with someone.  Maybe it's a drug transaction gone bad; maybe

9    it's a beef; what have you.  But all of a sudden you have

10   two guys, neither of whom should have guns, but both do have

11   guns, that start firing and shooting at one another and one

12   or both of them gets shot as you've been shot or killed and

13   quite possibly there are innocent bystanders who had nothing

14   to do with it who also get shot and possibly killed.

15           So I understand your concern about the danger

16   here.  But I also have got to say that you are perpetrating

17   and perpetuating that danger by repeatedly carrying a gun in

18   violation of federal and local law and being completely

19   unwilling to follow the guidance and the dictates of society

20   here.

21           You got another break.  You got eight months

22   there, the bottom of the guidelines, for that revocation;

23   and obviously, you were not convicted at all for that felony

24   in light of the Court's finding as to the Fourth Amendment,

25   which I'm not questioning at all.

1          But my point is that as I look at your record,

2     sir, you've gotten really break after break.  And on top of

3     that, we've been trying to offer you the services that you

4     say you need, that everybody agrees you need, and you

5     haven't taken it.

6          That puts us in a difficult position.  I am not

7     one who believes in just kind of brushing our hands and

8     saying, "Well, supervision doesn't work.  You are

9     unmanageable.  Good-bye.  I hope you do better on your own."

10    I don't think that is realistic.  I don't think that

11    properly incentivizes people.

12         I think I have a clear duty to protect society

13    here.  And you have shown, demonstrated through your

14    actions, through your prior claims that you're going to turn

15    your life around, and you haven't, that you're not going to

16    do it on your own and that we have to protect society

17    despite your actions.

18         I'm also aware that the Sentencing Commission has

19    found that people who are convicted of firearms offenses

20    recidivate at a higher rate than non-firearms offenders.  In

21    fact, over two-thirds of firearms offenders are rearrested

22    for a new crime during the eight-year followup period

23    compared to less than half of non-firearms offenders.

24    Firearms offenders recidivate more quickly than non-firearms

25    offenders and a greater percentage of firearms offenders are

1    rearrested for serious crimes than non-firearms offenders.

2    That's from Page 4 of the Sentencing Commission's Recidivism

3    Among Federal Firearms Offenders from June of 2019.

4            All that's to say I think you pose a significant

5    danger to our community.  I think that is demonstrated by

6    not only the statistics, but by you in particular, your

7    record, your failure to take advantage of the breaks that

8    you've had and your demonstrated resistance to following

9    court orders and to abiding by the criminal justice system.

10           I'm sorry for the circumstances you face.  I

11   recognize you have a lot of -- you're struggling with

12   personal demons and personal situations that I can't fully

13   understand.  But at some point, I've got to protect the

14   community, sir.  And I am very concerned that a three-month

15   sentence is not sufficient to protect the community.

16           I think I also have a clear need to discourage you

17   from further violations of law and violations of the

18   criminal justice system.  I think I need to somehow try to

19   send a message to you that the breaks that you've gotten in

20   the past clearly have not been fruitful.  In fact, if

21   anything, it looks to me like you've gotten a very wrong

22   message from the low-end sentences, from the downward

23   variances that you've gotten in the past.

24           For all these reasons, I think an upward variance

25   is appropriate.  I'm going to sentence you to 12 months'

1    incarceration.  I think anything less than that would not be

2    sufficient to comply with the purposes of sentencing in

3    light of the record in front of me.

4         It is the judgment of the Court that you, Deshawn

5    Hood, have violated the terms and conditions of your

6    supervised release.  Your term of supervised release is

7    hereby revoked.

8         After considering the factors set forth in 18 USC

9    3553(a), as well as consulting Chapter 7 policy statements

10   of the sentencing guidelines, you are hereby committed to

11   the custody of the Bureau of Prisons for a term of 12

12   months.

13        There will be no additional term of supervised

14   release following your release from incarceration.

15        Pursuant to 18 USC 3742, you have the right to

16   appeal the sentence imposed by this Court.

17        THE DEFENDANT:  Yeah.

18        THE COURT:  If you choose to appeal, you must file

19   any appeal within 14 days after the Court enters judgment.

20        If you are unable to afford the cost of an appeal,

21   you may request permission from the Court to file an appeal

22   without cost to you.

23        THE DEFENDANT:  And how I go about requesting the

24   Courts to file the appeal for me?

25        THE COURT:  You've got a fine attorney right now

1    next to you who will --

2              MR. LAWLOR:  I'll make sure the appeal goes out

3    today or tomorrow, your Honor.

4              THE COURT:  Mr. Lawlor, any objections that are

5    not already noted or any further issues that we should

6    discuss today?

7              MR. LAWLOR:  No, your Honor.

8              THE COURT:  And Mr. Wang?

9              MR. WANG:  No, your Honor.

10             THE COURT:  Thanks, folks.

11             Good luck to you, sir.  You're remanded to the

12   custody of the Attorney General.

13             (Proceedings concluded.)

14

15

16

17

18

19

20

21

22

23

24

25

1                          **<u>CERTIFICATE</u>**

2

3                    I, LISA EDWARDS, RDR, CRR, do hereby

4      certify that the foregoing constitutes a true and accurate

5      transcript of my stenographic notes, and is a full, true,

6      and complete transcript of the proceedings produced to the

7      best of my ability.

8

9

10                    Dated this 23rd day of October, 2022.

11

12               <u>/s/ Lisa Edwards, RDR, CRR</u>
                 Official Court Reporter
13               United States District Court for the
                   District of Columbia
14               333 Constitution Avenue, Northwest
                 Washington, D.C. 20001
15               (202) 354-3269

16

17

18

19

20

21

22

23

24

25