```
 1                UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2   ---------------------------X

 3   UNITED STATES OF AMERICA

 4                 Plaintiffs

 5            v.              Criminal Case 15-046-ESH

 6   DESHAWN HOOD,

 7          Defendant

 8   ---------------------------X
                                         Washington, D.C
 9                                    Monday, March 2, 2020
                                            2:10 p.m.
10
                    TRANSCRIPT OF SENTENCING
11          BEFORE THE HONORABLE ELLEN SEGAL HUVELLE
                   UNITED STATES DISTRICT JUDGE
12   APPEARANCES:

13   For the Government: Dineen Baker, AUSA
                         U.S. ATTORNEY'S OFFICE - D.C.
14                       601 D Street NW
                         Washington, DC 20530
15                       202-870-4940

16   For the Defendant:  Michael E. Lawlor, Esq.
                         BRENNAN MCKENNA & LAWLOR
17                       6305 Ivy Lane, Suite 700
                         Greenbelt, MD 20770
18                       301-474-0044

19

20

21

22

23   Court Reporter    Lisa Walker Griffith, RPR
                       U.S. District Courthouse, Room 6507
24                     Washington, D.C.  20001
                       (202) 354-3247
25
```

**P R O C E E D I N G S**

  THE DEPUTY CLERK:  This is criminal case 15-046. United States of America versus Deshawn Hood and criminal case 19-315, United States of America versus Deshawn Hood.

  Counsel, please approach the lectern and identify yourselves for the record.

  MS. BAKER:  Good afternoon, Dineen Baker for the United States.

  MR. LAWLOR:  Good afternoon, Michael Lawlor for Mr. Hood.

  THE COURT:  Good afternoon, Mr. Hood.

  THE DEFENDANT:  Good afternoon, Your Honor.

  THE COURT:  First I would like to ask the government what the status is of the case that is over at Superior Court.  It doesn't have a case number as far as I know.

  MS. BAKER:  Your Honor, the government did not indict that case so we don't anticipate that case going forward.

  THE COURT:  Okay.  That takes care of that one.

  So, what we're here on is the HOV relating to violation of conditions of release for the case that was 15 criminal 46-001.  Consistent with the research that the Court did, the government also now agrees, that we can go ahead, even though we threw out the '19 case, which is

1   19-315.
2           So, Mr. Lawlor, any response from you regarding
3   the HOV?
4           MR. LAWLOR:  Your Honor, just procedurally, Mr.
5   Hood is not going to admit to the violation but we will
6   stipulate to the evidence that Your Honor heard at the
7   suppression hearing.  We're not contesting the basic facts
8   or requiring the government to reprove them at this hearing.
9           THE COURT:  No, the Court certainly saw the tapes
10  of Mr. Hood in possession of the firearm even if I determine
11  that there was violation of Fourth Amendment, he was clearly
12  in possession of firearm by way more than preponderance of
13  the evidence or by beyond a reasonable doubt.
14          But at the same time, that is a violation.  The
15  Court's finding justifies a violation, that there has been a
16  violation of his supervised release.  Class C felony, 8 to
17  14 months, he also gets credit for time served in this
18  matter.  And he could get supervised release up to 36 months
19  minus any term of imprisonment that is imposed.
20          So, let us, I will hear you.  First I can hear
21  from the government.
22          MS. BAKER:  Thank you, Your Honor.  Your Honor,
23  the defendant in this case, as the Court is well aware, was
24  on supervised release for gun possession charge.  And then
25  was arrested twice more with two additional guns.  I

1   understand the one in Superior Court from December 17th, the
2   government is not going forward on.
3             But as the Court just stated, the Court saw that
4   the defendant was in possession of a firearm for the 2019
5   case.  So we would concur with probation's recommendation of
6   12 months imprisonment, then a term of supervised release
7   for 24 months to follow that.  I'm getting that from
8   document 31 that was filed on January 23 of this year.
9             THE COURT:  Okay.  Let us ask probation, is there
10  anything you want to add, Mr. Wilson?  They recommended 12.
11            PROBATION OFFICER WILSON:  Good afternoon, Your
12  Honor.  Andre Wilson from probation.  We wouldn't have
13  anything to add outside of the sentencing recommendation we
14  filed on January 23 which is document 31.
15            THE COURT:  Okay.  Thank you.
16            Mr. Lawlor, and Mr. Hood, I will hear from you.
17            MR. LAWLOR:  Your Honor, you may recall
18  Mr. Katzoff was originally Mr. Hood's attorney in this case.
19  He filed a memorandum asking the Court to release Mr. Hood
20  which contained a lot of helpful information about what
21  Mr. Hood was doing at the time of his arrest, all of which,
22  save for the possession of the firearm, was very good.  He
23  was working.  He was going to school.  I talked to the
24  probation officer today.  I understand that he was fully
25  compliant with his conditions.

1          So I do think Your Honor that Mr. Hood obviously
2  has these challenges.  You notice from his presentence
3  report, he has never been convicted of a crime of violence.
4  Your Honor will recall that the original quote-unquote
5  felony that gave jurisdiction for him to be considered a
6  felon in possession in the '15 case was for stealing some
7  T-shirts in Virginia.
8          THE COURT:  Yes.  But I recognized that by giving
9  him substantial reduction in his criminal history.  I said
10 it was overstated.  So instead of giving him a sentence of
11 33 to 47 months, he got 15 months.  So he has had a
12 substantial -- we've recognized what happened in Virginia.
13         MR. LAWLOR:  Right.  So Your Honor, there is a
14 little bit of a mixed bag here.  I think Mr. Hood is a young
15 man who came from a difficult place in the world.  It is and
16 remains a difficult place in the world.  He didn't have a
17 father.  His mother is in court.  She is very supportive.
18 Always has been.  So Mr. Hood has people in his life, his
19 mother and grandmother love him.  And he is really making a
20 concerted effort to do well.  He was, like I said, doing
21 hair economy at 200 hours in.  He was working, performing.
22 So he was involved in a lot of positive things.
23         And we all realize the dangers of even possessing
24 a gun because, in order for you to shoot the gun, or get
25 shot at or do anything nefarious with the gun, it all starts

1   with having access to it.  Here though, there appears to be
2   nothing more than access to the gun.  It is problematic,
3   Your Honor, particularly given the fact that he was on
4   supervision for possessing a gun.  But as I indicated, I
5   don't think Mr. Hood is somebody who is involved in violent
6   behavior, rather he is involved with really trying to better
7   himself.
8           So I do recognize that the Court gave him a break
9   the last time.  And that both probation and the government
10  asking for 12 months, Mr. Hood has been in custody for just
11  about six months now, the middle of this month will be six
12  months since his arrest date.
13          I'm asking the Court to sentence him to time
14  served and continuing him on supervised release.  I
15  appreciate the fact that there needs to be punishment.  But
16  I do question the wisdom of just having Mr. Hood cool his
17  heels at the D.C. jails for six more months.  Whether it be
18  community service or more stringent conditions to include
19  finishing the school, maintaining employment, doing things
20  that are going to break him out of this -- I don't want to
21  call it a cycle.  But for lack of a better term, the cycle
22  that he is in, rather than having him sit and do nothing at
23  the D.C. Jail.  So that's our request, Your Honor.
24          THE COURT:  Is his mother here now?
25          MR. LAWLOR:  Yes.

1             THE COURT:  Thank you for coming.
2             Okay. Mr. Hood, the Court will hear from you at
3    this point.
4             MR. LAWLOR:  Court's indulgence.
5             THE DEFENDANT:  Good afternoon, Your Honor.
6             THE COURT:  Good afternoon.
7             THE DEFENDANT:  I stand before you today kind of,
8    I don't want to say confused.  But it's sort of like
9    explains where I stand, Your Honor, because due to the fact
10   my reality, Your Honor, is not necessarily-- I don't want to
11   say I'm a criminal, Your Honor.  I don't want to say I'm a
12   bad guy.  When I was on the streets this is probably one of
13   the longest periods I have ever been in the streets.  I
14   actually mustered the confidence out of nowhere after being
15   detained in the system ad being around ignorance that is
16   bliss and a lot of uproar of negativity and surrounded by it
17   24-7, 7 days a week, every single day, I hate that I resort
18   to what I know, Your Honor.  But I just want to say, Your
19   Honor, I was shot, almost dead.  I woke out of a coma from
20   three days to see pipes and everything coming out of me,
21   Your Honor.  My mental status was only that I want to
22   protect myself, Your Honor.  I'm not a harmful, Your Honor.
23   I just want to secure my life so I can see tomorrow, that's
24   it, that's all.
25            I'm far from a bad individual.  I'm far from a

1  misguided individual.  I want better for myself and everyone
2  that is around me, Your Honor.  I watched jail strip me of
3  my relationships with friends, family members and the only
4  one that remains as always is my mother.
5           THE COURT:  What is going change when you get out?
6           THE DEFENDANT:  Your Honor, I have two jobs
7  awaiting me.  I was taking, I took mental health classes.  I
8  was going to mental therapy every single Thursday.  I did
9  action and my PO never recommended nothing.
10          THE COURT:  I know that.  What are you doing
11 walking around with a gun?  That came before you were shot.
12          THE DEFENDANT:  No, after.
13          THE COURT:  What is the date of the offense here?
14 Is it June 2019?
15          MR. LAWLOR:  September 16.
16          THE DEFENDANT:  September 16.  I was shot December
17 26, 2018.
18          THE COURT:  You were shot when, December?  2018?
19          THE DEFENDANT:  Yes, Ma'am..
20          THE COURT:  My mistake.  It wasn't 2019.
21          THE DEFENDANT:  Just the severity of the
22 situation, Your Honor, this is not my first time being shot.
23 Your Honor, I just don't want to die.  I don't want no
24 trouble at all.  I don't want no trouble with the courts.  I
25 had my run-in with the courts.  I don't want to come before

1  the courts anymore.  I understand clearly the situation.
2              THE COURT:  You are getting a couple of lucky
3  breaks.  They're not bothering you in Superior Court.  The
4  second case got dismissed pursuant to my opinion.  And when
5  I sentenced you back in '15, you got a real break.  So, I
6  agree with you that you don't want to be in front of the
7  courts but you seem to find a way.
8              If you go out at night and wander around the
9  streets, then you are asking for trouble and you are
10 worried.  I don't know what you are doing walking around the
11 streets at night.
12             THE DEFENDANT:  That's just the thing, Your Honor,
13 I was on my way home, I just wanted to go home.
14             THE COURT:  Where were you on the way home from?
15             THE DEFENDANT:  From my girlfriend's house.  I
16 just, I don't know, Your Honor, I don't know how to explain
17 it.  But truly honestly Your Honor, I just want to protect
18 myself.  What do you do when you only know one thing?  I
19 don't know other things.  I'm not given opportunities to
20 think positive.  I'm not placed around positive individuals
21 the majority time of my life.  I spent over 10 years or so
22 in prison incarcerated, negativity. Always negativity,
23 surrounds me upmost by negative, every single day.  I want
24 better for myself and I want to search better for myself but
25 how do I go about it if I have no guidance to gain it?

1          THE COURT:  You work with the probation office,
2     that's the first thing, Your Honor.
3          THE DEFENDANT:  I did everything possible--
4          THE COURT:  Up to a big point.  Wandering around
5     11:30 at night with a gun.  And apparently you were in
6     possession of a gun on a prior occasion, the one that we're
7     talking about in Superior Court, December.  That is not
8     doing everything you are supposed to do.  But you understand
9     that.  You were already on supervised release in Virginia at
10    that time, right?
11         THE DEFENDANT:  Yes, Your Honor, but I wasn't, the
12    situation that transpired in 2018, as I clearly wanted to
13    state, I was not in possession, Your Honor.  I know it seems
14    hard to believe but, Your Honor, I wasn't.  There was just a
15    big misunderstanding, I was shot over hearsay, Your Honor.
16         THE COURT:  I don't know what that means.
17         THE DEFENDANT:  Hearsay is more of a he say, she
18    say, a confusion of what is going on.
19         THE COURT:  That's not exactly hearsay.  But any
20    way, Mr. Hood, the Court is not going to just ignore that as
21    your counsel may be arguing.  The Court has decided to give
22    you the low end of the guideline range.  The recommendation
23    was for 12 months.  The Court is going impose eight.  You
24    will get credit for time served, I believe back to December
25    17, 2019.  You will be put on supervised release for 28

1  months as soon as you get out.

2             You again will have drug testing, drug treatment
3  if necessary.  I hope it is not.  You will also have
4  educational and vocational training and be expected to
5  obtain employment, and finally there will be mental health
6  treatment.

7             If you do what you are supposed to do, you will be
8  finished with the system after this is over, you will have
9  28 months of supervised release after you get out.  You will
10 serve, you have already served close to six months.  It's
11 five something I believe.  So it is going to be eight total.
12 It is not a long time.  You can do it but don't carry guns.
13 That's all there is to it.  Every time you pick up a gun and
14 walk around, you are going to hit the federal system, much
15 higher guideline range than in Superior Court.  So you have
16 to stop doing what you're doing.

17            Do you get that?  I don't care what happened to
18 you in the past.  If you have to, you know, you'll find a
19 job and move somewhere else, get out of the neighborhood.
20 Really, I'm sure that probation will work with you.  Mr.
21 Wilson is more than willing.

22            THE DEFENDANT:  We've been trying to get me
23 located, like we've been working on housing grants.  I found
24 out probation could financially support me on that matter.
25 And my P. O. was to speak on it today.  That was the last

1   thing that we were working on was move me in a secure
2   neighborhood and start me going on my own thing, Your Honor.
3              THE COURT:  Right.  I would ask that probation
4   assist him in moving out of his neighborhood because he is
5   obviously very vulnerable to his surroundings.  Your mother
6   is obviously a force of support.  And you ought to make sure
7   you stay home.  You don't get shot generally speaking when
8   you stay home.  And not involved with some people out there
9   that are going to get you in trouble.
10             The Court has to inform you, you do have a right
11  to appeal.  That means that you have 14 days to have your
12  counsel notice an appeal of the Court's sentence.  You
13  should understand that if you do not file a notice of appeal
14  within 14 days of entry of judgment, you will have lost the
15  constitutional right to appeal this sentence.  Is that
16  clear, sir?
17             THE DEFENDANT:  Yes, Ma'am.
18             THE COURT:  All right.
19             Anything else, Mr. Lawlor, from you or your
20  client?
21             MR. LAWLOR:  No, Your Honor.
22             THE COURT:  Okay.  Sir, I'm sure that we will see
23  a more successful time this time.  Thank you.
24             THE DEFENDANT:  All right.  Your Honor, thank you.
25             THE COURT:  The '19 case has been dismissed.

1     MS. BAKER: Yes, I was going do ask from the.
2     THE COURT: Case 19-315 has been dismissed on
3  motion of the government, it is not, my order is not being
4  appealed. And we have given the HOV has been decided in
5  15-046. Time served credit back to September 19, 2019.
6     MS. BAKER: Thank you.
7     THE COURT: Court is adjourned.
8     (Whereupon, at 2:31 p.m., the hearing concluded.)

CERTIFICATE OF REPORTER

I, Lisa Walker Griffith, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____     12-1-2022
Lisa Walker Griffith, RPR                  Date